UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BRANDON KINTE HATTON, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. H-03-326 |
| § | |
| JANIE COCKRELL, § | |
| § | |
| Respondent. § | |

## MEMORANDUM AND ORDER

Pending before this Court is a Motion for Summary Judgment filed by Janie Cockrell, Director of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID). Based on consideration of the pleadings, the motion, the record, and the applicable law, this Court GRANTS the motion.

### I. BACKGROUND AND CLAIMS

Petitioner, Brandon Kinte Hatton, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is incarcerated in the TDCJ-CID. He is serving a sentence in cause number 748683 in the 180th District Court of Harris County, Texas.

Petitioner was indicted for aggravated robbery and pleaded not guilty to the charge. Lott Brooks represented petitioner at trial and on appeal by Reo Harris. On May 6, 1998, the jury found Petitioner guilty and sentenced him to 67 years

imprisonment in the TDCJ-CID.

Petitioner filed a state application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging his conviction. *See Ex Parte Hatton,* Application No. 51,154-01, State Habeas Record (HR). The application was denied without written order on February 6, 2002. *Id*., at cover.

Petitioner raises these grounds in this federal application:

1. Petitioner is actually innocent of the crime.

2. Petitioner received ineffective assistance of trial counsel because counsel:
   a. failed to investigate Charlotte Woodward,
   b. failed to investigate the Limbadas, and
   c. failed to object to the introduction of extraneous offense evidence.

3. The state failed to prove each element of the indictment.

4. Petitioner received ineffective assistance of appellate counsel because counsel failed to investigate and raise certain issues on appeal.

5. The prosecutor committed misconduct.

The State set forth the facts of the case in its direct appeal brief in the Texas Court of Appeals as follows:

> The complainant, Tywana Castillo, lived with Jorge Serrano. Castillo worked as a teller in a bank and Serrano sold drugs for a living. Castillo had acted as an interpreter for Serrano. On March 13, 1997, Petitioner paged Castillo and negotiated with Serrano the purchase of one kilo of cocaine. Castillo knew Petitioner from past drug deals in which she had acted as an interpreter.
>
> On her way home from work on March 14, 1997, at Serrano's instruction, Castillo met with an individual at a gas station and picked up the cocaine. When she arrived at home, she gave the cocaine to

Serrano. Arrangements had been made for Petitioner to get the money and to pick up the cocaine that afternoon from Serrano at the Serrano home. Petitioner called to say he was not ready, but would be there. Castillo was sitting in the living room when Petitioner arrived at approximately 4:00 p.m.

Accompanying Petitioner into the home was a white male, Billy Ray Morrison. [The record inferentially indicates Petitioner and his brother, Demont Hatton, are black.] In contrast to previous exchanges, Petitioner acted nervous and requested the front door remain open. Morrison remained near the front door and Petitioner went into the restroom with Serrano for the exchange. While Castillo could not understand what was being said, she could hear voices in the bathroom. Suddenly, she heard Serrano say, "No Kevin, No Kevin" and then heard a single gunshot.

As she tried to get up from the couch, Petitioner's brother, Demont Hatton, ran into the house with a shotgun. He pointed the shotgun at her head, and ordered her to put her head down and not to look at him. At that point, Petitioner ran from the bathroom carrying a brown paper bag like the one which had contained the cocaine. Petitioner and Morrison fled from the house. Demont continued to hold the shotgun to Castillo's head and ordered her to crawl to the bathroom. When she reached the bathroom, Demont ordered her to remove her clothes and crawl into the bathroom.

While on the floor in the bathroom she saw Serrano who had been shot. He was in the bathtub begging her to help him. She drove him to the nearest hospital. He later died of the gunshot wound. Castillo contacted the police and gave Harris County Sheriff's Detective Brown Petitioner's pager number from which he learned Petitioner's name and address. Petitioner was later arrested, as was Morrison and Demont Hatton.

Petitioner's brother, Demont Hatton, was tried and found guilty for his participation in the same incident underlying Petitioner's conviction. HR, 63, 77.

## II. THE SUMMARY JUDGMENT & AEDPA STANDARDS

A party seeking summary judgment bears the initial burden of informing the district court of the basis for the motion, and identifying those portions of the record, which the moving party believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, (1986). In considering a motion for summary judgment, a court must review the material factual issues and give the non-moving party the benefit of every reasonable inference with respect to the facts alleged by that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") was signed into law. Pub. L. No. 104-132, 110 Stat. 1214 (1996). The AEDPA amended the federal habeas corpus statutes to place these restrictions on applications for habeas corpus relief:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e) (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court,

> a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254 (Supp. 1996).

## III. ACTUAL INNOCENCE

Petitioner claims he is actually innocent of the crime because evidence at his brother's trial shows that Petitioner already had a paper bag when he went into the bathroom to make the exchange with Serrano. Therefore, he did not steal the bag of cocaine that he had when he left the bathroom in Castillo's house.

Petitioner elaborates as follows: During the state habeas corpus proceeding, the prosecution claimed that the theft of the paper bag containing cocaine shows a robbery and Petitioner's aiding another person (his brother) to enter the victim's home and point a shot gun at the victim shows an aggravated robbery. Petitioner's brother's appellate lawyer, Leo Harris, said in an affidavit that he was aware that Petitioner had a paper sack brought to him by Billy Morrison and aware that Castillo had her brother-in-law remove drugs, drug paraphernalia, and the gun from the crime scene before the police arrived. The gun Castillo had removed was Serrano's gun. This testimony was given during Demont Hatton's trial.

The testimony at Demont's trial shows that when Petitioner entered the bathroom with Serrano, Petitioner already had a paper sack with him. Thus, Petitioner claims he is innocent because he did not steal the paper sack from Serrano and there is no theft element to support a conviction for aggravated robbery.

Petitioner does not claim that it was the same sack or same type of sack that he

carried out of the bathroom nor does he claim that the sack Morrison gave him contained cocaine. Based on Petitioner's assertion, the sack could have been empty when Morrison gave it to him and he filed it with the cocaine Serrano had. Moreover, Petitioner's claim of actual innocence is based on the evidence at his brother's trial, not his own trial. Furthermore, innocence is not by itself a constitutional claim. *See Herrera v. Collins*, 506 U.S. 390, 416 (1993) (a claim of innocence does not state an independent, substantive constitutional claim and is not alone a basis for federal habeas relief).

The record before this Court does not raise a genuine issue of material fact that Petitioner is actually innocent. Petitioner's claim of actual innocence can be alternately construed as a claim that the element of the indictment concerning a theft was not proven, *i.e.*, a claim of insufficiency of the evidence. Construed as such, this alternate construction of this claim is discussed below in Section V.

### IV. ASSISTANCE OF TRIAL COUNSEL

To establish ineffective assistance of counsel, a petitioner must show: (1) that his lawyer's performance was deficient under prevailing standards and (2) that this deficiency prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The prejudice component requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.,* at 691. The petitioner must prove that because of counsel's errors, there is a reasonable probability that the result of the trial would have been different and that counsel's deficient performance rendered the trial unfair. *See Lockhart v.*

*Fretwell*, 506 U.S. 364, 369-70 (1993).

### A. Failure to Investigate Woodard and the Lambadas

Petitioner's first ineffective assistance claim is that counsel failed to properly investigate Charlotte Woodard as a possible witness. Petitioner asserts as follows: Petitioner asked Woodard to testify about what she knew. Counsel failed to speak to Woodard prior to trial. However, counsel stated in an affidavit in the state habeas corpus proceeding that he did speak to Woodard before trial and asked her to appear at trial. Counsel says he tried to contact Woodard several times but contradicts himself by claiming he asked her to appear at the guilt-innocence phase of the trial. In her affidavit, Woodard says she did not talk to counsel until she arrived at the trial. Counsel stated in his affidavit: "it was not until that point [apparently when Woodard showed up at the trial proceedings] Woodard told me the substance of her testimony, which was that she had been talking to another woman on the phone who identified someone else other than applicant as the perpetrator of the crime." Counsel admitted it was not until Woodard appeared during the punishment phase that he learned the substance of her testimony. Counsel's statement shows he failed to conduct an independent investigation to determine if he should call Woodard as a witness. Counsel erred in waiting until trial to investigate. Woodard would have been a strong defense witness because she could have testified that Castillo told someone that somebody other than Petitioner committed the offense.

In his reply to Respondent's summary judgment motion, Petitioner adds the following: Petitioner denies that he shot Serrano. Counsel did not call witnesses who would testify that someone other than Petitioner was seen leaving the crime scene before Castillo dragged Serrano from the house.

Woodard would have testified that Castillo had informed her or someone else

that Petitioner had not robbed and shot Serrano. Counsel failed to subpoena Woodard. Counsel failed to summon this potential witness who would have "plainly showed" that Petitioner was not the person identified to Woodard as being the one who robbed and shot Serrano.

Petitioner concludes that counsel's statements are partially untrue and contradictory because counsel says he *tried* to contact Woodard before trial (meaning he did not contact her), but also says he asked her to appear at trial (meaning he did contact her because he spoke to her). However, these two statements are not necessarily inconsistent. If they are inconsistent statements, the inconsistency is neither significant nor consequential.

Petitioner claims as follows concerning the Lambadas: Lasoria and Jawed Lambada, neighbors of Castillo, would have been good defense witnesses. They would have testified they saw three white males leaving Castillo's house just prior to her dragging Serrano from the house. Petitioner relies on court testimony by Castillo to support his assertion about the Lambadas' potential testimony. The cited testimony by Castillo shows she told her unnamed neighbor that she did not want any help with moving Serrano and did not want anyone to touch him, but did (inconsistently) ask the neighbor to help him stand up. She also said that unnamed neighbors did not get involved except to stand outside and watch Castillo drag Serrano to her car.

Petitioner says Castillo's testimony "plainly shows" her neighbors were outside when the crime occurred, that she was attempting to cover up something, and did not want her neighbors involved. Petitioner concludes that this testimony "proves that the Lambadas did in fact see the people leaving the scene of the crime." Petitioner's conclusions are not justified based on the trial testimony.

Brooks submitted an affidavit to the state habeas court. HR, 61-62. Brooks

stated:

> With regard to the allegation that I failed to interview Charlotte Woodward and failed to call her to testify at trial, this allegation is not completely true. I attempted to contact Charlotte Woodward several times, and I asked her to appear during the guilt stage of trial. However, Woodward did not arrive at the courthouse until the punishment stage had begun. It was not until that point that Woodward told me the substance of her testimony, which was that she had been talking to another woman on the phone who identified someone other than the applicant as the perpetrator of the crime.
>
> With regard to the allegation that I failed to interview Lasoria Limbada and Jawed Limbada, this allegation is false. Either myself or my investigator did talk to Lasoria Limbada, who was the wife of Jawed Limbada. Lasoria would supposedly have testified that she saw three white males near the victim at the time of the crime; however, the Limbada's clearly did not want to be involved in the trial. Jawed told us that his wife could not testify at the trial because she was in the hospital. In any event, I believe that Lasoria would have made a bad and difficult witness based on her reluctance to be involved in the case.
>
> HR, 61-62.

The state habeas court found this affidavit to be true. HR, 83-84.

The record shows that counsel made reasonable attempts to talk to Woodard and

was not able to determine the substance of her potential testimony until it was too late. Counsel reasonably investigated Woodard as a potential witness, but did not call her as a witness because she failed to appear timely in court. The record shows that counsel did not call the Lambadas because he determined that the only potential witness, Lasoria, was reluctant and consequently would have been a bad and difficult witness.

A petitioner must show not only that an uncalled witness or other evidence would have been favorable, but also that the witness would have testified at trial or that the evidence was otherwise available. *See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986). The assistance provided by counsel concerning Woodard and the Lambadas was within an objective standard of reasonableness. Furthermore, Petitioner has failed to show that he was harmed by any failure of his attorney to investigate Woodard and the Lambadas further or his failure to call them as witnesses. Petitioner has failed to raise a genuine issue of material fact that his counsel was ineffective in failing to properly investigate or call Woodard or the Lambadas.

## B. AEDPA Review of the Assistance of Counsel Determination

The record before this Court also does not raise a genuine issue of material fact that this Court can grant relief overcoming the restrictions in 28 U.S.C. § 2254(d),(e). Whether counsel was ineffective is a mixed question of law and fact and is controlled by the "unreasonable application" part of section 2254(d). *See Moore v. Johnson*, 101 F.3d 1069, 1075-76 (5th Cir. 1996). The state court's adjudication on the merits that counsel was not ineffective concerning Woodard and the Lambadas is not contrary to and did not involve an unreasonable application of clearly established federal law under *Strickland*. 28 U.S.C. § 2254(d)(1). Under the record, the state habeas court's adjudication on assistance of counsel was not

incorrect or erroneous, much less also unreasonable. *See Williams v. Taylor*, 529 U.S. 362, 411 (2000). This Court cannot grant habeas corpus relief.

The fact findings that are subsidiary to an ineffective assistance of counsel determination and implicitly underlie that determination are fact questions governed by 28 U.S.C. § 2254(e)(1). *See Black v. Collins*, 962 F.2d 394, 405-06 (5th Cir. 1992) (discussing a prior version of § 2254(d)). The state habeas findings are presumed correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner has not overcome this presumption of correctness. Therefore, this Court is also precluded from granting relief on the ineffective assistance ground because the state habeas court's explicit and implicit fact findings concerning defense counsel's effectiveness have not been rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, the ineffectiveness determination was not unreasonable in light of the evidence underlying the determination. Therefore, Petitioner is also precluded from habeas corpus relief on the ineffective assistance of counsel claims because the state court's decision is immune from this federal habeas challenge under subsection (d)(2) of 28 U.S.C. § 2254.

**C. Failure to Object to Extraneous Offense Evidence**

Petitioner was charged with aggravated robbery. However, during the trial evidence of the killing of Serrano was admitted. Petitioner claims his counsel was ineffective for failing to object to evidence of the extraneous offense.

Under Texas law, evidence of an extraneous offense which is "indivisibly connected" to the offense being tried is admissible. *See Lockhart v. State*, 847 S.W. 2d 568, 571 (Tex. Crim. App. 1992). The record shows that the shooting of Serrano was inextricably linked to the robbery of the cocaine Serrano possessed. Counsel's

failure to object to admissible evidence is not deficient performance under *Strickland*, nor is there prejudice caused by the failure to object.

The summary judgment record does not raise a genuine issue of material fact that counsel was ineffective or that this Court has authority to grant federal habeas corpus relief under 28 U.S.C. § 2254(d), (e).

## V. INSUFFICIENCY OF THE EVIDENCE

Petitioner claims the prosecution failed to prove three parts of the state's case: (1) Petitioner placed Castillo in fear of imminent bodily injury or death, (2) the bag Petitioner took away from Castillo's house contained cocaine, and (3) physical evidence that Petitioner or his brother were ever in Castillo's house.

The federal habeas standard for insufficiency of the evidence in a state court conviction is "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (emphasis in original). *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under this standard, the jury may disregard any evidence it chooses to disregard. The fact-finder can find not credible, and thus ignore, any evidence. *Id*. Any contradictory testimony does not affect the validity of the guilty verdict. *Id*. Furthermore, the evidence can be sufficient to support a conviction under *Jackson* even when it also supports a claim of innocence. *See Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

Petitioner was convicted as a party. HR, 58-59. The evidence at trial showed that the perpetrators shot and killed Serrano and Petitioner's brother pointed a shotgun at Castillo. There was sufficient evidence to show that Petitioner, acting with his brother, placed Castillo in fear of imminent bodily injury or death. There was evidence at trial to allow the jury to infer that the bag Petitioner left the house

with contained cocaine. There was no need for physical evidence to show that Petitioner and his brother was in Castillo's house. Direct testimony by Castillo established this fact.

This Court also construed Petitioner's actual innocence claim to raise an insufficient evidence claim. He argues there is no theft element to support a conviction for aggravated robbery because he did not steal the paper sack from Serrano. Petitioner's indictment charged that he "unlawfully, while in the course of committing theft of property owned by [complainant] and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place [complainant] in fear of imminent bodily injury and death, and the [appellant] did then and there use and exhibit a deadly weapon, to-wit: a firearm." Petitioner was not charged with completing a theft. The indictment alleges he was "in the course of committing theft of property."

The testimony at trial showed:

> That [Petitioner] and a white man came to Tywana Castillo's house in order to buy cocaine, and that in contrast to previous drug exchanges, [Petitioner] acted nervous and requested that the front door remain open during the transaction (SF III, pp. 16-17, 31); that while [Petitioner] was talking to Castillo's husband in the bathroom, Castillo heard a gunshot; immediately thereafter, a black man with a shotgun came walking through the front door to the house (SF III, pp. 36-37); and that [Petitioner] came out of Castillo's bathroom holding a paper bag that he did not have when he entered, said "Let's go," to the white man who was with [Petitioner], and left Castillo's house (SF III, pp. 36-37).

This evidence shows that Petitioner acted in the course of committing a theft

regardless of what other testimony the jury heard. The evidence is sufficient to prove the theft element of the indictment even if there was also powerful testimony that Petitioner did not and was not committing or attempting to commit a theft.

Petitioner's claims of insufficient evidence are also procedurally barred. Under Texas law, sufficiency-of-the-evidence claims must be raised on direct appeal. *See Ex Parte Christian*, 760 S.W.2d 659, 660 (Tex.Crim.App.1988). The federal courts recognize this. *See Brown v. Collins*, 937 F.2d 175, 178 (5th Cir. 1991).

A petitioner is procedurally barred from bringing a habeas claim before a federal court if his application to the state court has been denied due to a procedural default. *See Coleman v. Thompson,* 501 U.S. 722, 729 (1991). Here, the Texas Court of Criminal Appeals denied the state writ application without written order and based on the trial court's findings. HR, at cover. The trial court concluded that Petitioner's challenge to the sufficiency of the evidence was not cognizable on state habeas corpus review. The state trial court concluded the insufficiency claim had to be raised on direct appeal under Texas law, citing *Ex Parte McClain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994). HR, 85. Petitioner has procedurally defaulted his insufficiency of the evidence claims by failing to raise them in his state direct appeal.

Petitioner is therefore procedurally barred in this Court unless he can establish "cause" and "prejudice" or "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id*. at 750 (citations omitted). The Supreme Court has held that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. at 753 (citations omitted). The record does not raise a genuine issue of material

fact showing cause, prejudice, or a fundamental miscarriage of justice. Petitioner's sufficiency-of-the-evidence claim is procedurally barred.

In his response to the summary judgment motion, Petitioner asserts the following: Procedurally barring his sufficiency of the evidence claim disregards justice. Petitioner's actual innocence claim is tied to his claims of ineffective assistance of counsel. The evidence Respondent cites in his summary judgment brief "is incorrect." Castillo "first told another person" that someone other than Petitioner shot Serrano and robbed her. Petitioner says he was not the person who went to Castillo's home and shot Serrano on March 14, 1997. Castillo had someone remove evidence from her house before the police arrived. Petitioner is not under a death sentence and is not a terrorist. Therefore, applying the Antiterrorism and Effective Death Penalty Act (AEDPA) to him violates equal protection.

Petitioner fails to raise a genuine issue of material fact that he is actually innocent or that the evidence is insufficient to sustain the conviction, and fails to raise a genuine issue of material fact that the insufficiency claims are not procedurally barred.

## VI. ASSISTANCE OF APPELLATE COUNSEL

Construing his pleadings liberally, Petitioner claims ineffective assistance of appellate counsel for failing to raise these issues on appeal: (1) factual and legal insufficiency of the evidence, (2) ineffective assistance of trial counsel for failing to present testimony from Woodard and the Lambadas, including testimony from one of these potential witness concerning the bag one of the perpetrators had during the commission of the offense.

As explained above, these claims lack merit. In any event, there is no showing that any of the potential appellate claims raised by Petitioner in his federal application would have been successful on direct appeal in state court. Therefore, Petitioner has not shown prejudice based on counsel's failure to raise these issues. *See Duhamel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992) (*Strickland*'s prejudice component applies to claims of ineffective assistance of counsel on appeal). Consequently, appellate counsel was not ineffective for failing to raise these issues on direct appeal.

The record before this Court does not raise a genuine issue of material fact that appellate counsel was ineffective under the deficient performance prong or the prejudice prong of *Strickland*.

## VII. PROSECUTORIAL MISCONDUCT

Petitioner claims that the prosecutor made improper statements in his jury argument during the punishment phase. The prosecutor said that Petitioner "managed to rob somebody, shoot somebody, threaten a woman with a shotgun–and she will never recover from him" and later said Petitioner was "shown to be nothing but a violent character." Petitioner maintains these assertions are outside the evidence.

Under Texas law, a "reasonable deduction from the evidence" is an acceptable jury argument. *See Brown v. State*, 692 S.W.2d 497, 502 (Tex. Crim. App. 1985)(*en banc*). As discussed above, Petitioner was convicted as a party and the evidence at trial showed that the perpetrators shot and killed Serrano and robbed Castillo. Petitioner's brother pointed a shotgun at Castillo, ordered her to take off

her clothes, and ordered her to crawl naked to the bathroom, where she saw Serrano bleeding to death. The prosecutor's statements that Castillo "will never recover" and Petitioner is a violent character are reasonable deductions from the evidence.

To state a claim for an unconstitutional jury argument in a state criminal trial the facts must show that the jury argument made the trial fundamentally unfair. *See Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000). To obtain habeas relief, "it must be established not merely that the [argument] is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The statements by the prosecutor during argument did not violate the Constitution. *See United States v. Young*, 470 U.S. 1, 11 (1985) ("a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context.").

The record before this Court does not raise a genuine issue of material fact that the prosecutor violated the Constitution in his jury argument during the punishment phase.

## VIII. CONCLUSION

The record before this Court does not raise a genuine issue of material fact that Petitioner is in custody in violation of the Constitution. Respondent is entitled to summary judgment on Petitioner's habeas corpus claims raised in this action.

Respondent's Motion for Summary Judgment [Docket Entry No. 7] is GRANTED and this case is DISMISSED with prejudice under Rule 56. All other pending motions and requests for relief are DENIED.

This Court finds that Petitioner has not made a substantial showing of the denial

of a constitutional right.  The issues raised here are not debatable among jurists of reason, could not be resolved in a different manner, and do not deserve encouragement to proceed further.  *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983).  This Court finds that a Certificate of Appealability should not issue in this case.

SIGNED the 18th day of May, 2005.

_____
David Hittner
United States District Judge